FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 97 OCT 28 PM 1: 54
EASTERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| FELIX LIONELL GARRETT, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CASE NO. CV95-AR-2130-E |
| ) | |
| DON JONES, et al, ) | ENTERED |
| ) | |
| Defendants ) | OCT 28 1997 |

## MEMORANDUM OPINION

Plaintiff, Felix Lionell Garrett, has submitted a complaint and amended complaint pursuant to 42 U.S.C. § 1983. Named as defendants are Don Jones, Chief Correctional Officer at the Talladega County Jail (TCJ); and correctional officers Gerald Van Fletcher, Marcus Gover,[1] Chris Hurst, Terry Daniel, and Todd Hatfield.[2] Garrett alleges that defendants violated his First, Eighth, and Fourteenth Amendment rights while Garrett was a pretrial detainee at TCJ in 1995. In accordance with the practices of this court, defendants were ordered to file a special report responding to plaintiff's allegations. Defendants filed their special report accompanied by affidavits and exhibits, and the report was construed to be a motion for summary judgment. Plaintiff was informed of the provisions of Rule 56, Fed. R. Civ. P., and afforded the opportunity to submit opposition.

---

[1] Plaintiff refers to this defendant in his pleadings as "Marcus Glover."

[2] Plaintiff refers to this defendant in his pleadings as "Todd Hastfield."

### Plaintiff's Allegations

Plaintiff alleges in his complaint, as amended, that Jones (1) refused to allow him necessary medical care, (2) charged him with a false disciplinary and placed him in segregation in retaliation for plaintiff's complaint that Fletcher used excessive force against him and to conceal Fletcher's misconduct, (3) improperly presided over plaintiff's disciplinary hearing, (4) placed false information in his file which caused him to be classified for close custody upon receipt into the custody of the Alabama Department of Corrections, and (5) failed to publish policies for and train TCJ staff in proper techniques for placing and removing inmates from cells. Garrett alleges defendant Fletcher used excessive force against him. He asserts defendants Hurst, Daniel, Hatfield and Gover failed to prevent Fletcher from assaulting him. Plaintiff also alleges state law claims of negligence and assault and battery.

Garrett has submitted his own affidavit and those of other inmates in reply to defendants' motion for summary judgment. Garrett avers that during the afternoon of April 13, 1995, while he was a pretrial detainee at TCJ, he witnessed Fletcher returning to the cell block with inmate Lewis Curry, who was assigned to the cell next to plaintiff's. Curry threatened Fletcher, and Fletcher hit him in the chest and began struggling with Curry. Gover, Daniel, Hurst and Hatfield arrived, and Hurst and Hatfield helped subdue Curry while Gover and Daniel watched. Plaintiff states he came out of his cell and told Gover to stop Fletcher and the other officers from "assaulting" Curry; Gover then told plaintiff to get back in his cell. Garrett claims he immediately turned to enter his cell and "went head first into the steel cage door with extreme force." He "grabbed the door to keep from falling" and felt a knot rise on his forehead. When Garrett turned, he saw Fletcher "standing directly behind [him]" and surmises Fletcher pushed him. Fletcher then ordered plaintiff into his cell. Plaintiff

2

alleges Hurst, Hatfield, Daniel, and Gover failed to prevent Fletcher from attacking him. Garrett avers he asked for medical care at that time but was refused. He also asked to talk to defendant Jones.

Garrett alleges that when he advised Jones of the incident with Fletcher, Jones violated his First Amendment rights by charging him with a false disciplinary for assault on Hatfield, in retaliation for his complaint about Fletcher and to cover up the alleged assault on plaintiff by Fletcher. Jones assertedly took this action while telling plaintiff his badge allowed him to do so. Plaintiff also alleges he asked Jones for pain medication because he had a headache from the blow to his head, but Jones only offered him a bag of ice. Garrett was placed in administrative segregation on April 13, 1995, allegedly in retaliation for his complaint to Jones against Fletcher and after refusing to "forget" the incident. He further states after he was placed in the administrative segregation cell, his head ached badly so he went to sleep. When he awoke about 8:00 p.m. that evening, he still had a bad headache; he asked for and received Tylenol from Officer Nathaniel Fomby. He later asked Officer Gerald Loman for medical care, and Loman contacted Dr. Davis, the jail physician. Dr. Davis recommended that paramedics be called.

The paramedics took Garrett to the hospital where he states he received a CAT scan and eye tests. Garrett alleges he suffered two concussions and "massive" facial tissue damage. He claims he was still experiencing severe headaches five months after the incident. He also avers Jones refused to let him see his personal physician. Once plaintiff was returned to the jail, he was kept under watch for 24 hours before being placed back in administrative segregation. Plaintiff acknowledges he was seen by the jail physician after his hospital visit. Dr. Davis prescribed hydrocodone[3] for plaintiff's

---

[3] Hydrocodone is a narcotic analgesic prescribed for relief of moderate to moderately severe pain.

3

headaches. He also was able to receive Tylenol and Motrin, at his own expense. Plaintiff and defendants have submitted a copy of plaintiff's September 4, 1995, request to see his private physician. Jones replied that Garrett's doctor could come to the jail to see Garrett but that it was Garrett's responsibility to contact the doctor. Garrett avers he did not have a shower or change of clothing from April 14 to April 30; he does not dispute defendants' statement that he refused to take a shower. Plaintiff also complains about having to wear handcuffs while showering or outside the jail.

Garrett has also provided the court with an affidavit from Darren Barclay. Barclay states that he witnessed Lewis Curry being restrained by Hurst and Hatfield, and he heard plaintiff "[speak] on the beating to Officer Gover." Gover told plaintiff to return to his cell, then "Officer Fletcher shoved him head first into the steel cage door while he was walking toward his cell."[4] In his affidavit, Moneek Ackles declares plaintiff was standing next to Gover while officers were restraining Curry, telling the officers they were wrong. Ackles also states "Mr. Garrett went to try and stop the guards from beating Mr. Curry and in the process got hurt hiself [sic] when Mr. Fetcher [sic] push [sic] him in the back and upon that push Mr. Garrett hit his head on the cell door . . ."

Garrett asserts that he was deprived of procedural due process in connection with a disciplinary proceeding. He complains that he was served with a false disciplinary by Fletcher on April 14, 1997, charging him with assault and gang violence. A hearing was held on April 17, with Jones as the hearing officer. Plaintiff was found guilty of the charges and sentenced to six months

---

[4] Garrett also has submitted a signed but unsworn statement from Lewis Curry. Because the statement is neither notarized nor sworn to under penalty of perjury in accordance with 28 U.S.C. § 1746, it cannot be considered as evidence. The statements of Karey Michael Norris and Gregory Todd West submitted by plaintiff are not relevant to the issues in this lawsuit.

in administrative segregation. Garrett contends Jones placed false information in Garrett's file, stating he assaulted a guard, was in a gang, and was violent. He alleges he was not allowed to shower or change his clothing from April 13 to May 5, 1995, and when he was allowed to shower, he had to wear handcuffs. He also complains his telephone and visitation privileges were suspended from April 17 to August 7, 1995.

**Defendants' Response**

Defendants deny that plaintiff's First or Fourteenth Amendment rights were violated. They also invoke qualified immunity as a defense. Defendants state that on November 18, 1994, Garrett was arrested and jailed for failure to pay child support. On December 2, 1994, he also was charged with first degree robbery. In affidavits, defendants aver plaintiff was generally uncooperative, belligerent, disruptive and violent, causing a security and safety risk. Garrett violated jail rules on a number of occasions, including engaging in a conspiracy to incite a riot and injure corrections officers.

Defendants aver that on April 13, 1995, Lewis Curry actively resisted Fletcher's attempts to place him in his cell. Fletcher told plaintiff during his struggle with Curry to get in his cell and lock the door. Additional corrections officers were called to assist Fletcher with Curry. Hatfield arrived, grasped Curry, and held him face down on the floor so Fletcher could handcuff him. According to the affidavits of Fletcher, Hatfield and Gover, Garrett exited his cell[5] and began beating on Hatfield's back and head. Because Hatfield was holding Curry, he could not defend himself from Garrett.

---

[5] Jail rules require, in the case of any security problem, that all inmates enter their cells and lock themselves in. Garrett was aware of this rule.

Fletcher pulled plaintiff off Hatfield and placed him in his cell, during which plaintiff apparently struck his head on the cell door.

Defendants further aver that approximately 30 minutes after the incident, Jones called for plaintiff to discuss his assault on Hatfield. Garrett asked for pain medication, which was provided. Plaintiff initially refused the ice pack Jones offered him but later accepted it. During the evening of April 13, Officer Gerald Loman noticed a bump on the right side of plaintiff's forehead. Garrett asked to see a doctor; therefore, the jail physician, Dr. Davis, was called. Dr. Davis advised jail officials to call paramedics. The paramedics decided to take plaintiff to the hospital, where he was examined by Dr. Brian Harkins. Plaintiff informed Dr. Harkins he had been in an altercation at the jail in which his forehead was injured, and that he had become dizzy and almost passed out about 7:00 or 8:00 that evening. The notes from his examination show he had a large hematoma/contusion[6] measuring approximately 1⅝ inches long by ¾ inches wide by ⅜ inches high on the right lateral forehead with tenderness but no abnormality in the eyes. The diagnosis is "blunt trauma-hematoma." There is no mention in the notes of concussion. Plaintiff was given a CAT scan of the head. The CAT scan was negative for masses, bleeding or fracture, and indicated only some soft tissue swelling. He received a shot of Toradol for pain. Dr. Harkins states in his affidavit that because plaintiff was an inmate and relatively inaccessible for follow-up treatment, he decided out of an abundance of caution to order tests that would not normally be given for a patient with a bump on the head. Garrett was discharged with instructions to take Tylenol for pain over the next 48 hours and see the

---

[6] A hematoma is a localized collection of blood, usually clotted, due to a break in a blood vessel. A contusion is a bruise.

6

jail physician if symptoms continued. Dr. Harkins states in his affidavit that plaintiff was not suffering from a serious medical condition.

Defendants affirm that plaintiff was served with a notice of contemplated disciplinary action on April 14 and received a hearing on April 17. Jones found him guilty, based on testimony of corrections officers and other inmates, of assault and conspiracy to disrupt the orderly operation of the jail. He was sentenced to six months in disciplinary segregation without privileges. On May 18, 1995, Garrett submitted a grievance "to see someone about taking a shower." Jones replied that since his placement in disciplinary segregation, plaintiff had been offered a shower three times per week but had refused each time. Defendants state Garrett had the opportunity to have his clothes washed along with other inmates' at least twice a week, and it was his responsibility to place his clothing in the laundry bag for collection.

### DISCUSSION

### Summary Judgment Standard

The provisions of Rule 56(c) mandate the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); *Kramer v. Unitas*, 831 F.2d 994, 997 (11th Cir. 1987). Generally, a motion for summary judgment will be construed in the light most favorable to the non-moving party. *See Rollins v. Tech-South, Inc.*, 833 F.2d 1525 (11th Cir. 1987). However, the non-movant need not be given the benefit of every inference, but only every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir. 1988). The mere existence of some

alleged factual disputes will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 250-51. Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just and speedy and inexpensive determination of every action. *Celotex*, 477 U.S. at 327, *quoting Fed. R. Civ. P.* 1; *Barnes v. Southwest Forest Service Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987). The non-moving party may not rely upon mere conclusory allegations in the complaint or affidavit. *Fullman v. Graddick*, 739 F.2d 533 (11th Cir. 1984). In this action, the plaintiff is entitled to only those inferences which by their nature are reasonable. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Fanciful or delusional allegations or assertions of fact need not be considered in assessing the relative burdens of the parties. *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L.Ed.2d 338 (1989).

### Excessive Force Claim

Because Garrett was a pretrial detainee at the time of the incident made the basis of this action, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment. *Hamm v. Dekalb County*, 774 F.2d 1567 (11th Cir. 1985). However, there is little or no distinction between the Fourteenth Amendment and Eighth Amendment analysis in excessive force cases. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 n. 10,

8

104 L.Ed.2d 443 (1989). The inquiry focuses on the need for application of force, the relationship between the need and the amount of force used, and the extent of injury inflicted upon the inmate. *Whitley v. Albers*, 475 U.S. 312 (1986). *See also Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987). Under *Albers*, the reasonableness of a jail official's use of force turns on whether unnecessary and wanton pain was inflicted on the inmate. The court must determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. at 320-21. In evaluating the challenged conduct of prison officials, a court must keep in mind the paramount concerns of maintaining order and discipline in an often dangerous and unruly environment. *Ort v. White*, 813 F.2d 318, 322 (11th Cir. 1987). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the court set out certain factors to be considered in evaluating whether the use of force was wanton and unnecessary under *Whitley v. Albers*. They include the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison officials, any efforts made to temper the severity of a forceful response, and the extent of the injury suffered by the inmate. The absence of serious injury is relevant but not dispositive.

    A need for the application of force has been shown where a prisoner has created a disturbance or refused a direct order. *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990); *Brown v. Smith, supra.* "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Bennett v. Parker*, 898 F.2d at 1533, quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). The management of inmates by guards may "require or justify the occasional use of a degree of intentional force," and decisions made to restore order are entitled to deference. *Id.*

9

Plaintiff has provided the court with affidavits from himself and witnesses to the altercation. Defendants have also provided their own affidavits. It is undisputed that plaintiff failed to comply with a jail regulation requiring prisoners to lock themselves in their cells in the event of a disturbance. The record also establishes that Garrett was interfering with the officers attempting to subdue Lewis Curry.[7] Fletcher propelled Garrett toward his cell, and plaintiff's head struck the door in the process. There is no evidence that Fletcher's purpose was solely to cause harm, but instead was a measured response to a security threat. The action taken by Fletcher was not disproportionate to the need to restore order and discipline in a potentially explosive situation. This finding applies whether the confrontation occurred in the manner described by plaintiff or defendants. Because Fletcher was not using excessive force against Garrett, Gover, Hurst, Hatfield, and Daniel had no duty to forestall Fletcher's action.

### Denial of Medical Care Claim

The United States Supreme Court has held that it is only "deliberate indifference to serious medical needs of prisoners which will give rise to a claim of cruel and unusual punishment in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.), *cert. denied*, 434 U.S. 864 (1977). Grossly incompetent or inadequate care of an inmate can constitute deliberate indifference. *Waldrop v. Evans*, 871 F.2d 1030 (11th Cir. 1989).

---

[7] It is disputed whether plaintiff was only verbally haranguing the officers or whether he physically attacked Hatfield.

10

A mere difference of opinion between an inmate and an institution's medical staff as to treatment cannot alone give rise to a cause of action under the Eighth Amendment. *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976). *See also Estelle v. Gamble, supra*, at 106-108. The court must first determine whether there was evidence of a serious medical need. If so, the court must then consider whether the defendants' response to that need amounted to deliberate indifference. *Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989).

Plaintiff's medical records and the affidavit of Dr. Brian Harkins establish affirmatively that plaintiff was not suffering from a serious medical condition. He received a bump on the head which was diagnosed as a hematoma with contusion. He did not suffer a concussion, bleeding, or fracture of the skull. It is undisputed that Don Jones gave plaintiff Tylenol or aspirin at plaintiff's request shortly after the incident. It is also undisputed that when the bruise appeared worse later that evening, the jail physician and paramedics were contacted, and plaintiff was taken to the hospital for treatment. The only follow-up treatment that was indicated was Tylenol as needed for a period of two days. Dr. Davis, the jail physician, prescribed hydrocodone for pain, and plaintiff had access to Tylenol and Motrin. When plaintiff requested to see his private physician, he was informed by Don Jones that he could make arrangements for his doctor to come to the jail to examine him. It appears plaintiff never took advantage of the opportunity to do so. The facts simply do not establish deliberate indifference by defendants to any serious medical need. Accordingly, this claim is without merit.

### Due Process Claims

Plaintiff avers that he was denied due process in his disciplinary proceeding because defendant Jones was the hearing officer. The United States Supreme Court, in *Sandin v. Connor*, ___ U.S. ___, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995), held that placement in disciplinary segregation does not implicate the due process clause, in the absence of a forfeiture of good time. Because there is no right to procedural due process of law before the imposition of disciplinary segregation, neither the lack of due process nor any deficiency in the procedure actually used is actionable under the Fourteenth Amendment or § 1983. *See also Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974).

Garrett also contends that the disciplinary charge against him for assault on Officer Hatfield was false, and known by Jones to be false, and in retaliation for plaintiff's complaint about Fletcher. Plaintiff has also alleged that Jones knowingly placed false information in his file.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Eleventh Circuit Court of Appeals held that authorities may not knowingly use false information against an inmate. However, the actions of authorities must be flagrant or unauthorized. *Id.* at 1442. It is not sufficient that there is a dispute regarding the truth or falsity of the information; the official must know it is incorrect. Defendant Jones was not present when Garrett is alleged to have assaulted Hatfield. Plaintiff told him one version of the event, and the officers reported another. Jones made a credibility determination at the disciplinary hearing based on the evidence before him. Garrett has presented no evidence that Jones knew the report of Hatfield, Fletcher, Gover, Hurst, and Daniel to be false. Plaintiff also has adduced no evidence to support his claim that Jones retaliated against him with disciplinary action

for reporting that Fletcher shoved him. He was merely following standard procedure for a report of violation of jail rules and regulations. Jones is not liable to plaintiff under *Monroe v. Thigpen*.

### Failure to Train Claim

Plaintiff has not provided sufficient evidence nor factual allegations to support his claim that Jones failed to train jail staff in the proper techniques for placing and removing inmates from cells. Nor has plaintiff demonstrated any causal connection between the alleged failure to train and the alleged assault on him. Therefore, summary judgment is due to be granted to defendant Jones on this claim.

### Hygiene Claims

Garrett has alleged that he was not permitted to shower or change his clothing for a 3-week period. Defendants have submitted affidavit evidence that Garrett refused the opportunity to take a shower. He also failed to avail himself of the jail's laundry service for his clothing. Plaintiff has not disputed this evidence. The Supreme Court has stated that prison officials need only provide inmates with "reasonably adequate" food, clothing, shelter and sanitation. *Newman v. State of Alabama*, 559 F.2d 283, 286 (5th Cir. 1977), *rev'd in part on other grounds sub nom, Alabama v. Pugh*, 438 U.S. 781 (1978). The uncontroverted evidence is that plaintiff deprived himself of the opportunity to shower and have his clothes laundered. Therefore, these claims are without merit.

Garrett has also complained that he was required to shower with handcuffs on. The handcuffing of inmates who might cause a security or safety threat is rationally related to the legitimate penological objective of maintaining jail security. Therefore, the court will not secondguess

the decision of Talladega County Jail authorities. *Turner v. Safley*, 482 U.S. 78 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.") Garrett has also alleged that he was denied telephone and visitation privileges for a number of weeks. Under Alabama law, store and telephone privileges are not liberty interests. *Zamudio v. State*, 615 So. 2d. 156, 157 (Ala. Crim. App. 1983). Therefore, the denial of telephone privileges does not implicate any constitutional guarantee.

## CONCLUSION

Based on the foregoing, the court **EXPRESSLY DETERMINES** that there exists no genuine issue of any material fact as to any claim asserted by plaintiff in this action and that defendants are entitled to judgment as a matter of law. Accordingly, it is **ORDERED, ADJUDGED** and **DECREED** by the court that the motion for summary judgment of defendants be and the same is hereby **GRANTED** and the action is **DISMISSED WITH PREJUDICE**.

**DONE** this 28th day of October, 1997.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE